**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------

MARCELO ROBLES,                                    **05 CV 5553 (SCR) (GAY)**

                    *Plaintiff,*

        -against-

ARGONAUT RESTAURANT & DINER, INC.,          **ECF Case**
RITA PLANET, INC. & SOTIRIOS KOLLIAS,
                    *Defendants.*
------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace, Esq.
110 East 59th Street, 32nd Floor
New York, New York 10022

*Attorneys for Plaintiff*

On the Brief:

Michael A. Faillace, Esq  (MF 8436)
Marc Alain Steier, Esq.  (MS 3543)

## TABLE OF CONTENTS

I.    **PRELIMINARY STATEMENT**     1

II.   **STATEMENT OF FACTS**     3

    **A.  The Summary Judgment Standard**     3

    **B.  The Defendants are Employers Within the Scope
    of the FLSA and the New York State Labor Law**     5

        1.  The Defendants Were an Enterprise Engaged in Commerce     6

        2.  Defendant Kollias, individually, is an Employer
        within the meaning of the Act and the N.Y.S. Labor Law     9

    **C.  The Overtime Provisions of the Act and the New York
    State Labor Law Were Violated by the Defendants**     10

        1.  The Plaintiff Was Paid An Hourly Wage
        and Is Therefore a Non -Exempt Employee
        Under the Salary –Basis Test     10

        2.  The Time Worked by the Plaintiff As a Cashier or
        As a Seating Host  was Over 40 per Week     12

    **D. Defendants Actions In Failing to Pay Overtime Were Willful,
    and Thus The Act's 3 Year Statute of Limitations Applies**     13

    **E.  Plaintiff is Entitled to Liquidated Damages Under the Act
    And New York State Labor Law**     17

    **F.  Plaintiff is Entitled to Spread of Hours Compensation**     18

    **G.  Defendant's Made Unlawful Deductions from
    Plaintiff's Paychecks**     19

III.  **CONCLUSION**     21

## **TABLE OF AUTHORITIES**

### **Cases**

Alvarez v. IBP, Inc., 339 F.3d 8934 (9th Cir. 2003)……………………………………………………14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (U.S. 1986)……………………………………………....3

Archie v. Grand Central Partnership, Inc., 997 F.Supp 504 (S.D.N.Y 1998)…………………………....6, 8

Barcellona v. Tiffany English Pub, 597 F.2d 464, 468069 (5th Cir. 1979)………………………………17

Boekemeier v. Fourth Universalist Soc. in the City of N.Y., 86 F.Supp. 2d 280 (S.D.N.Y. 2000)…………6

Bowrin v. Catholic Guardian Soc., 417 F.Supp. 2d 449 (S.D.N.Y. 2006)………………………………….5

Brennan v. Iowa, 494 F.2d 100 (8th Cir. 1974)……………………………………………………………7

Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 3383 (S.D.N.Y. 2007)…………………………..18

Chung v. New Silver Palace Rest., 272 F.Supp. 2d 314 (S.D.N.Y. 2003)…………………………………9

Damassia v. Duane Reade, Inc., 2005 WL 1214337 (S.D.N.Y. 2005)……………………………………13

 Delaware & Hudson Railways v. Conrail, 902 F.2d 174 (2d Cir.1990),

cert. denied 500 U.S. 928 (1990)…………………………………………………………………………4

Dole v. Bishop, 740 F. Supp. 1221 (D. Miss. 1990)…………………………………………………….....7

Donovan v. Agnew, 712 F.2d 1509 (1st Cir. 1983)………………………………………………………9

Donovan v. Litvin, 791 F.2d 916 (3d Cir. 1986)………………………………………………………..13

Donovan v. Litvin, 1985 U.S. Dist. LEXIS 17047 (D. Pa. 1985)………………………………….....13, 14

Doo Nam Yang v. ACBL Corp., 427 F.Supp 2d 327 (S.D.N.Y. 2005)…………………………………...18

Espinosa v. Delgado Travel Agency, Inc., 2007 U.S. Dist. LEXIS 30676 (S.D.N.Y. 2007)…………..…18

Falk v. Brennan, 414 U.S. 190 (1973)…………………………………………………………………….9

Goenaga v. March of Dimes, 51 F.3d 14 (2d Cir. 1995)…………………………………………………3

Gonzalez v. El Acajutla Rest., 207 U.S. Dist. LEXIS 19690 (E.D.N.Y. 2007)……………………………5

Guepet v. Int'l TAO Sys., Inc., 110 Misc. 2d 940, 940-42,

443 N.Y.S.2d 321 (Sup. Ct. Nassau Co. 1981)…………………………………………………………19

Hardick v. Airway Freights Systems, Inc., 63 F.Supp. 2d 898 (D. Ill.1999)…………………………………14

Harold Levison Assocs., Inc. v. Chao, 37 Fed. Appx. 19, 22 (2d Cir. 2002)………………………………..13

Herman v. RSR Sec. Servs., 172 F.3d 132, 142 (2d Cir. 1999)…………………………………………...9, 14

Holt v. KMI-Continental, Inc., 95 F.3d 123 (2d Cir. 1996), cert. denied, 520 U.S. 1228 (1997)…………..3

Jenkins v. Hanac, Inc. 493 F.Supp. 2d 556 (E.D.N.Y. 2007)…………………………………………………19

Laffey v. Northwest Airlines, Inc., 567 F.2d 429 (D.C. Cir. 1976),

cert. denied, 434 U.S. 1086 (1978)……………………………………………………………………...17

Magan v. Lufthansa German Airlines, 339 F.3d 158 (2d Cir. 2003)…………………………………………4

Marshall v. Brunner, 668 F.2d 748 (3d Cir. 1982)……………………………………………………...7, 17

McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)……………………………………………13

Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985), cert. denied, 474 U.S. 829 (1985)…………………………4

Meloff v. New York Life Ins. Co., 51 F.3d 372 (2d Cir. 1995)……………………………………………4

Moon v. Kwon, 248 F. Supp. 2d 201 (S.D.N.Y. 2002)……………………………………………………18

National Automatic Laundry and Cleaning Council v. Schultz, 443 F.2d 689 (D.C. Cir. 1971)…………..8

Norton v. Sam's Club, 145 F.3d 114 (2d Cir.), cert. denied, 525 U.S. 1001 S. Ct. 511 (1998)…………….4

P & L Group, Inc. v. Garfinkel, 541 N.Y.S. 2d 535 (2d Dept. 1989)……………………………………...18

Pachter v. Bernard Hodes Group, Inc. 2005 U.S. Dist. Lexis 18005 (S.D.N.Y 2005)…………………….19

Prunier v. City of Watertown, 936 F.2d 677 (2d Cir. 1991)………………………………………………3

Sasso v. Cervoni, 985 F.2d 49 (2d Cir.), cert. denied, 508 U.S. 973 (1993)…………………………………9

Schwapp v. Town of Avon, 118 F.3d 106 (2d Cir. 1997)…………………………………………………4

Stern v. Trustees of Columbia Univ., 131 F.3d 305 (2d Cir. 1997)………………………………………..4

Vital v. Interfaith Medical Center, 168 F.3d 615 (2d Cir. 1999)…………………………………………5

Wirtz v. First National Bank & Trust Co., 365 F.2d 641 (10th Cir. 1966)………………………………6

Woroski v. Nashua Corp., 31 F.3d 105 (2d Cir. 1994)……………………………………………………3

Xelo v. Mavros, 2005 U.S. Dist. LEXIS 21588 (E.D.N.Y 2005)……………………………………………5, 6

## **Statutes**

29 U.S.C. § 621………………………………………………………………………………………….....1

42 U.S.C. § 2000e………………………………………………………………………………………….1

29 U.S.C. § 203(d)……………………………………………………………………………………….2, 9

29 U.S.C. § 203(r)………………………………………………………………………………………….8

29 U.S.C. § 203(r)(1)………………………………………………………………………………………6

29 U.S.C. § 203(s)(1)(A)(i)-(ii)……………………………………………………………………………6

29 U.S.C. § 207(a)(1)………………………………………………………………………………1, 2, 6, 10

29 U.S.C. § 216(b)……………………………………………………………………………………….17

29 U.S.C. § 255(a)……………………………………………………………………………………2, 13

29 U.S.C. § 260……………………………………………………………………………………….2, 17

29 U.S.C. § 663(1)……………………………………………………………………………………….17

Federal Rule of Civil Procedure 56……………………………………………………………………….1

Federal Rule of Civil Procedure 56(c)……………………………………………………………………3

N.Y. Comp. Codes. R. & Regs. tit. 12, § 142-2.4 and 142-2.20…………………………………….1, 18

New York State Executive Law §290…………………………………………………………………….1

New York State Labor Law § 2(6)………………………………………………………………………..9

New York State Labor Law § 651(6)……………………………………………………………………..9

New York State Labor Law § 190……………………………………………………………………….2

New York State Labor Law § 190(3)……………………………………………………………………..9

New York State Labor Law § 193………………………………………………………………….2, 19, 20

New York State Labor Law § 652…………………………………………………………………….....1

New York State Labor Law § 663……………………………………………………………………….2

New York State Labor Law §663(1)…………………………………………………………………….17

# I.
## PRELIMINARY STATEMENT

Plaintiff Marcelo Robles ("Robles") by counsel, submits this memorandum of law in support of his motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 ("FRCP") and Local Rule 56.1. The pertinent facts, which compel the relief requested, are stated in the accompanying Declaration of Michael A. Faillace, annexed Exhibits, and the plaintiff's Rule 56.1 statement of undisputed material facts.

This is an action for unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), ("FLSA" or "the Act"), the New York State Labor Law § 652 *et seq*., ("N.Y. S. Lab. Law ") and the "spread of hours" wage order of the New York State Commissioner of Labor codified at N.Y. Comp. Codes. R. & Regs. tit. 12, § 142-2.4 and 142-2.20 (2005) (herein the "Spread of Hours Wage Order"), as well as for national origin discrimination in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*., and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., and the New York State Executive Law, § 290 *et seq*.

In the instant application, Robles seeks partial summary judgment to recover unpaid overtime wages in violation of the Act, the New York State Labor Law, and the Spread of Hours Wage Order, as well as to recover damages for the unlawful $50.00 weekly deduction made by the defendants from plaintiffs' pay for a period of some 15 months. The civil rights violations are not implicated in the plaintiff's motion.

The plaintiff now moves for partial summary judgment on the following grounds:

1)  The defendants, including Sotirios Kollias ("Kollias"), are all covered employers within the meaning of the FLSA, 29 U.S.C. § 203(d) and the New York State Labor Law;

2)  The plaintiff was engaged in commerce or in the production of goods for commerce while employed by the defendants, and is an individual employee covered by the FLSA, the New York State Labor Law, and the Spread of Hours Wage Order;

3)  The plaintiff was paid on an hourly basis and is not otherwise exempt;

4)  The defendants intentionally failed to pay plaintiff overtime at the rate of one and one-half times his regular rate for each hour worked in excess of forty (40) hours per week in violation of the Act, 29 U.S.C. § 207 (a)(1), and in violation of N.Y. S. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor;

5) The defendants' failure to pay plaintiff premium overtime payments was willful within the meaning of 29 U.S.C. § 255(a) and N.Y.S. Lab. Law § 663, and was not in good faith within the meaning of 29 U.S.C. § 260;

6)  The plaintiff's regular work shifts exceeded ten hours per day, but plaintiff was not given "spread of hours" pay in violation of the Spread of Hours Wage Order;
and,

7)  The defendants made unlawful deductions from the plaintiff's wages for a period of some 15 months in violation of N.Y.S. Lab. Law § 193.

## II.
## STATEMENT OF FACTS

The Court is respectfully directed to the accompanying FRCP 56.1 Statement, Declaration of Michael A. Faillace ("Faillace Decl."), and accompanying Exhibits, for material, uncontroverted facts in support of the plaintiff's instant motion for partial summary judgment. All references to that Statement will be to "Robles 56.1 Statement at ¶ __" and to the Exhibits annexed to the Declaration of Michael A. Faillace as "Exhibit __."

### A.    **The Summary Judgment Standard**

In deciding this motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the plaintiff contends that the parties' pleadings and submissions, including depositions, interrogatory answers and admissions, and documentary disclosures , together demonstrate that there is no genuine issue of material fact on the claims under relevant federal and state wage and hour laws. FRCP 56(c). As such, the plaintiff is entitled to a judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Holt v. KMI-Continental, Inc., 95 F.3d 123, 128 (2d Cir. 1996), cert. denied, 520 U.S. 1228 (1997); Goenaga v. March of Dimes, 51 F.3d 14 (2d Cir. 1995); Woroski v. Nashua Corp., 31 F.3d 105 (2d Cir. 1994).

To defeat a motion for summary judgment, defendants must "present evidence based on which reasonable jurors could find by a preponderance of the evidence that the [party] is entitled to a verdict." Prunier v. City of Watertown, 936 F.2d 677, 679 (2d Cir. 1991) (quoting, Anderson v. Liberty Lobby, Inc., 477 U.S. at 252). The defendants cannot meet this standard in order to defeat the plaintiff's application. Summary judgment is certainly warranted as no reasonable fact-finder can

3

reach a contrary result to plaintiff's contentions.  Magan v. Lufthansa German Airlines, 339 F.3d 158, 161 (2d Cir. 2003).

Of course, the evidence to be adduced must be admissible.  FRCP 56(e).  All of the evidence offered in support of this application is admissible.  The Second Circuit has held that unsubstantiated conclusory assertions are not sufficient to withstand a motion for summary judgment.  Delaware & Hudson Railways Co. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir.), cert. denied, 500 U.S. 928 (1990), Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).  The defendants' proffered evidence is conclusory and self-serving.

Indeed, the annexed documents and uncontrovered deposition testimony by the defendants' Manager (Ms. Maura Robles, hereinafter "Manager"), and Kollias (the sole owner of the defendant restaurants) support this application.

Where, as here, the plaintiff provides convincing evidence to support the underlying claims in the complaint, and the defendants' explanations of conduct and their contentions consist of purely conclusory allegations, the Court may decide that no material issue of fact exists and it may grant summary judgment in favor of the plaintiff.  Norton v. Sam's Club, 145 F.3d 114, 117-118 (2d Cir. 1998), cert. denied, 525 U.S. 1001; Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312-14 (2d Cir. 1997); Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995); Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985), cert. denied, 474 U.S. 829 (1985).

The function of the District Court is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried.

> Assessments of credibility and choices between conflicting versions
> of the events are matters for the jury, not an exercise for the court on
> summary judgment.  Any weighing of the evidence is the prerogative

4

of the finder of fact, not an exercise for the court on summary judgment.

Vital v. Interfaith Medical Center, 168 F.3d 615, 622 (2d Cir. 1999).

The plaintiff prays that the Court determine that the allegations and defenses offered by the defendants are self-serving and conclusory, and that the facts in the plaintiff's FRCP 56.1 statement, Declaration of Michael A. Faillace, and Exhibits be deemed true and grant the relief sought in the instant application.

**B.**    **The Defendants are Employers Within the Scope of the FLSA and the New York State Labor Law**

An employee falls within the ambit of the Act's overtime pay protections if either of two conditions (respectively known as "individual coverage" or "enterprise coverage") exist: (1) the employee individually was "engaged in commerce or in the production of goods for commerce," or (2) the employer was an "enterprise engaged in commerce or in the production of goods for commerce," regardless of whether the individual employee was so engaged. 29 U.S.C. §§ 203(s)(1)(A), 207(a)(1); Gonzalez v. El Acajutla Restaurant, 207 U.S. Dist. LEXIS 19690 at * 17 -18 (E.D.N.Y. 2007), citing, Bowrin v. Catholic Guardian Soc., 417 F. Supp.2d 449, 457-58 (S.D.N.Y. 2006); Xelo v. Mavros, 2005 U.S. Dist. LEXIS 21588, 2005 WL 2385724, at *2 (E.D.N.Y. 2005).

It is plaintiffs' contention, admitted at various times and in a variety of forms by defendants and their Manager, that the defendants together comprised an "enterprise engaged in commerce" within the meaning of the statute. See, Robles 56.1 Statement at ¶¶ 5-10; Exhibits C, D, E, H, and I.

1. <u>The Defendants Were an Enterprise Engaged in Commerce</u>

This legal theory implicates two separate statutory terms: "enterprise" and "engaged in commerce." The FLSA defines the former term, in pertinent part, as follows:

> 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . ..

29 U.S.C.A. § 203(r)(1).

To be "engaged in commerce," an Enterprise must involve "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and an "annual gross volume of sales made or business done" in the amount of $500,000 or more. 29 U.S.C. § 203(s)(1)(A)(i)-(ii). "Enterprise" coverage has been broadly interpreted by the Courts broadly given the remedial nature of the FLSA. See <u>Boekemeier v. Fourth Universalist Society In the City of New York</u>, 86 F.Supp. 2d 280 (S.D.N.Y. 2000). While the plaintiff believes that he is also covered within the more restrictive notation of "individual coverage,[1]" he was certainly within the ambit of this more permissive definition as an "employee handling, selling, or otherwise working on goods or materials that have been moved . . . in commerce." See generally, <u>Wirtz v. First National Bank & Trust Co.</u>, 365 F.2d 641, 645 (10th Cir. 1966); <u>Archie v. Grand Central Partnership, Inc.</u>, 997 F.Supp. 504, at 528 – 31 (S.D.N.Y. 1998). Plaintiff, and indeed all of the defendants' employees, routinely handled goods moved in commerce or produced for commerce.

---

[1] While the plaintiff feels little need to argue in the alternative concerning the defendants' coverage by the FLSA, the plaintiff contends that he is also covered as an "individual." Under "individual coverage" under the FLSA, a worker is covered by the Act if he has either "engaged in commerce" or "engaged in the production of goods for commerce." 29 U.S.C. § 207(a)(1) (1999). The conduct of the plaintiff when he was the employee of defendants falls within this "individual coverage." Exhibit N, ¶¶ 2-4, 7; 56.1 Statement at ¶ 22. <u>Xelo v. Mavros</u>, <i>supra</i>; <u>Boekemeier</u>, <i>supra</i>, 86 F.Supp. 2d at 287.

Exhibit N at ¶¶ 2 – 4; 7; Robles 56.1 Statement at ¶ 22.  Plaintiff was clearly an employee within that term's meaning.  Brennan v. Iowa, 494 F.2d 100 (8th Cir. 1974) (state institutions many of whose employees, including nurses, housekeepers, and food servers, handled articles such as cleaning supplies, towels, and food that were manufactured or produced outside the state, were covered by the Act); Dole v. Bishop, 740 F. Supp. 1221, 1225 (S.D. Miss. 1990) (seafood restaurants were covered enterprises because waitresses, cooks, and busboys of both establishments regularly handled food items and cleaning supplies shipped from outside state); Marshall v. Brunner, 668 F.2d 748 (3rd Cir. 1982) (a local garbage collection and scrap metal business that operated within a single county was covered under the enterprise theory because its employees used trucks, tires, batteries, shovels, brooms, oil, and gas that were purchased locally but had moved in interstate commerce).

As for the statutory threshold of $500,000 for coverage under the Act:  one of the defendant corporations is alleged to have grossed less than the jurisdictional minimum (i.e. Rita Planet grossed under $50,000 in the applicable years) but together, the restaurants grossed well over $500,000 in each applicable year, it is necessary to see whether Argonaut Diner, Tarrytown Diner, and Rita Enterprises are a single "Enterprise." Robles 56.1 Statement at ¶ 5 and Exhibits referenced therein. See, Dole supra.

It was made clear by Kollias that his restaurants were, and are, a joint enterprise and integrated operation.  First, Kollias admitted  that he was the sole officer and shareholder of Argonaut and Rita Planet.  Robles 56.1 Statement at ¶ 9; Exhibit B at ¶ 10.  Argonaut operates the Argonaut Restaurant and operated the Tarrytown Diner; Rita Planet operates Café Eclipse.  Robles 56.1 Statement at ¶ 4; Exhibit C.

In a sworn Affidavit entirely unrelated, and predating, the instant action, Kollias admitted that he is the

> sole Owner of Argonaut Restaurant & Diner, Inc." . . .and that Argonaut shares common ownership with two (2) other corporations . . .Rita Planet . . .doing business under the trade name 'Café Eclipse'. . . (and) KDP of Tarrytown, Inc. (which) previously operated a diner restaurant. . ..

Exhibit L at ¶¶ 1-3.

Second, Kollias admitted that he treated the operations of the restaurants interchangeably. He employed 44 workers at his restaurants between 2002 and 2005. Robles 56.1 Statement at ¶ 7. Kollias routinely transferred employees -- including the plaintiff -- between these various locations. Robles 56.1 Statement at ¶¶ 7-8; Exhibit D. Management (Ms. Maura Robles) and ownership (Kollias) were the same for all restaurants, records for the restaurants were kept at a central location (Argonaut), and cash from all of these businesses would be delivered to Kollias at the Argonaut in Yonkers. Robles 56.1 Statement at ¶¶ 6, 9-10; Exhibit C and E.

Separate business entities qualify as a single enterprise where related activities, whether performed in one or more establishments, are performed through unified operation and common control for a common business purpose. 29 U.S.C. § 203(r). The critical inquiry in cases where different business entities are involved, is whether operational interdependence exists. National Automatic Laundry and Cleaning Council v. Schultz, 443 F.2d 689, 692 (D.C. Cir. 1971); Archie supra, at 528 – 531.

It is clear that operational interdependence existed between the defendants herein.

2.      Defendant Kollias, individually, is an Employer
within the meaning of the Act and the N.Y.S. Labor Law

As the sole owner, proprietor, and corporate officer of Rita Planet and Argonaut, Kollias was in total operational control of all the restaurants at which plaintiff worked. Kollias admitted these material facts in his Interrogatory Responses, deposition, an Affidavit sworn to years prior to the instant litigation, and even in a 1998 notarized letter to the American Embassy in Peru. Exhibits C, D, H, K, and L. It is impossible for Kollias to now deny these facts.

The Act defines "employer" broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Our Supreme Court has emphasized the "expansiveness" of this definition. Falk v. Brennan, 414 U.S. 190, 195, See also Herman v. RSR Sec. Svcs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). New York State's Labor Law also defines the term broadly. See N.Y. S. Lab. Law §§ 2(6), 651(6); 190(3). The definition is essentially the same for an individual under both, and the following analysis will thus rely upon the same case law. See Chung v. New Silver Palace Rest., 272 F.Supp. 2d 314, 318 n.6 (S.D.N.Y. 2003).

Where Kollias had operational control over the defendant restaurants, as he admitted readily, then the overwhelming weight of authority is that he is an "employer" jointly and severally liable under the Act (and also New York State Labor Law) for unpaid wages. Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983) (citing cases); Sasso v. Cervoni, 985 F.2d 49, 50 (2d Cir.), cert. den., 508 U.S. 973 (1993) (Applying the FLSA's definition, courts have imposed liability for a corporation's minimum wage obligations upon a corporate officer who was personally responsible for making (or not making) the required payments") (ERISA case; citing Donovan in dictum).

9

**C.** **The Overtime Provisions of the Act and the New York State Labor Law Were Violated by the Defendants**

This motion seeks partial judgment on that portion of the plaintiff's complaint concerning the defendants failure (both willful and without any good faith explanation) to pay Robles overtime under the Act and the New York State Labor Law.  Section 7 of the Act provides that:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives an overtime premium wage.

29 U.S.C. § 207(a)(1).

The record developed to date, and upon which the instant motion must be based, is full of material and uncontroverted proof that the defendant knew that the plaintiff worked in excess of 40 hours per week, was paid based upon an hourly rate, did not pay the plaintiff overtime wages, and failed to keep records required by law, but rather paid the plaintiff "straight pay" based on an hourly rate of $10.00.  The defendant also began to cut the plaintiff's hours, and thus his pay, once the plaintiff began complaining of the defendants' deducting $50.00 a week from his pay.

  1. The Plaintiff Was Paid An Hourly Wage And Is Therefore a
    Non -Exempt Employee Under the Salary –Basis Test

The plaintiff contends, and has conclusively shown in the Rule 56.1 Statement supporting the instant application, that he was paid per hour of work for his entire tenure with the defendants. This is material and uncontested.  In one exhibit from 1998, Kollias swore that the plaintiff was paid

10

$15.00 per hour.  Robles 56.1 Statement at ¶ 20; Exhibit K.  However, for the purposes of this motion the plaintiff accepts as true that the plaintiff was paid $10.00 per hour.  Robles 56.1 Statement at ¶ 33; Exhibit F.

A set of exhibits introduced at the examination before trial of the Manager, and the testimony of the Manager, show that the plaintiff was paid based on the number of hours he worked.  From 2002 through his termination in 2004, Robles was paid anywhere from $200.00 to $610.00 per week.  Robles 56.1 Statement at ¶ 3; Exhibit F.  Although it may seem repetitious to recite the proofs, this fact is central to the herein motion for partial summary judgment and the plaintiff begs the Court's indulgence in plaintiff's explication of his hourly payments in the following demonstrative table:

| Week Ending | Total Hours Worked | Total Credited[2] | Exhibit/ Bates No. |
|---|---|---|---|
| May 11, 2003 | 66 | $660.00 | Ex. F;  Robles 0021 |
| May 18, 2003 | 60 | $600.00 | Ex. F;  Robles 0022 |
| May 25, 2003 | 65 | $650.00 | Ex. F;  Robles 0023 |
| June 1, 2003 | 41 | $410.00 | Ex. F;  Robles 0024 |
| June 8, 2003 | 51 | $510.00 | Ex. F;  Robles 0025 |
| June 18, 2003 | 55 | $550.00 | Ex. F;  Robles 0026 |
| June 22, 2003 | 59 | $590.00 | Ex. F;  Robles 0027 |
| June 29, 2003 | 29 | $290.00 | Ex. F;  Robles 0028 |
| July 6, 2003 | 61 | $610.00 | Ex. F;  Robles 0029 |
| January 11, 2004 | 51 | $510.00 | Ex. F;  Robles 0030 |

2 These amounts do not reflect the total paid to plaintiff. This figures represent the gross amount credited to him, and does not count the $50.00 unlawful weekly deduction made from his pay, discussed *infra* at page 19.

| January 14, 2004 | 25 | $250.00 | Ex. F;  Robles 0031 |
|---|---|---|---|

These documents, and the testimony of the Manager, directly controvert the so-called admissions in defendants' Interrogatory Responses and the statements by Kollias in his pleadings and examination before trial concerning plaintiff being paid a salary.  Compare, Exhibit E at pages 169–174, 81–3, 144–155, and 166-7; Exhibit C at pages 54, 69, and 107.  The foregoing uncontrovertedly shows that the plaintiff was paid on an hourly – and not salaried – basis.

### 2.  The Time Worked by the Plaintiff As a Cashier or As a Seating Host  was Over 40 per Week

The testimony of Kollias, even taken alone, conclusively proves that the plaintiff worked as a seating host or cashier.  Robles 56.1 Statement at ¶¶ 19, 27 – 9.  The contentions of Kollias in his deposition that plaintiff was a "manager" are controverted by his own sworn Interrogatory Responses.  Indeed, in his letter to the American Embassy in Peru, Kollias termed the plaintiff an "Assistant Manager."  Exhibit K.  It must be noted that this sworn letter contradicted Kollias' testimony in his examination before trial when he stated that the plaintiff had *never* worked as an "assistant manager."  Exhibit C at page 62.  Frankly, beyond going to Kollias' credibility as a witness, it is irrelevant what formal title the plaintiff carried -- whether as he termed himself, or as termed by Kollias -- given his having been paid on an hourly basis.

The plaintiff worked in excess of 40 hours per week.  In describing the hours worked by plaintiff every day, Kollias testified in his examination before trial that the plaintiff worked 10 hours a day.  Exhibit C at page 128. This is both material and uncontroverted.

The testimony of the Manager shows that the plaintiff worked up to 66 hours a week. Robles 56.1 Statement at ¶ 26; Exhibit E at pages 81– 83. She credibly testified[3] that the plaintiff worked between 64 and 66 hours per week. Id. This testimony confirms the admissions by Kollias that the plaintiff worked at least 10 hours per day – thus at least 20 hours overtime.

**D.    Defendants Actions In Failing to Pay Overtime Were Willful, and Thus the Act's 3 Year Statute of Limitations Applies**

An employee covered by the Act must raise a claim within two years of an employer's non-willful violation of the FLSA, or within three years of a willful violation. See 29 U.S.C. § 255(a). An FLSA violation is deemed willful if an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); see also Harold Levinson Assocs., Inc. v. Chao, 37 Fed. Appx. 19, 22 (2d Cir. 2002). Here, the defendants willfully violated the overtime provisions of the Act, and thus the three-year limitations period applies.

An employer should be "aware of the existence of the FLSA and its overtime requirements" in order to be liable for willful violations. Damassia v. Duane Reade, Inc., 2005 WL 1214337, at *2 (S.D.N.Y.). However, it is not enough for an employer to plead blind ignorance as to their obligations under the Act. See Donovan v. Litvin, 791 F.2d 916 (3d Cir. 1986) (affirming Donovan v. Litvin 1985 U.S. Dist. LEXIS 17047, at *15-16 (E.D.Pa.) ("Litvin") (finding that an employer demonstrated reckless disregard for the FLSA by failing to make further inquiries into the applicability of the FLSA). In Litvin, the plaintiff did not have any evidence that the employer

---

3 As noted in the Rule 56.1 Statement, any attempts to discredit the testimony of the Ms. Robles, the person who Kollias did, and still does, hold responsible as his general manager, must be proven by mere conclusory allegations

affirmatively knew "anything about the possible applicability of the FLSA to him." <u>Litvin</u>, 1985 U.S. Dist. LEXIS 17047, at *15-16.  However, the Court rejected the employer's argument of ignorance because his own employment records should have placed him on notice to make further inquiries.  <u>Id</u>.  Here, as in <u>Litvin</u>, the plaintiff has no direct evidence that Kollias knew about the applicability of the Act in relation to Robles' employment; however, the defendants never attempted to apprise themselves of their obligations under the Act.      The defendants' willful violations are also apparent by their failure to take any steps to ensure compliance with the FLSA.  Willfulness is established when an employer fails to investigate whether its compensation policy was legal.  <u>See Hardick v. Airway Freights systems, Inc.</u>, 63 F.Supp. 2d 898, 904 (N.D.Ill. 1999); <u>see also</u> <u>Herman</u> , <i>supra,</i> (applying a three-year statute of limitations because employer "could easily have inquired" into steps for compliance after an employee complained about the employer's compensation practices); <u>Alvarez v. IBP, Inc.</u>, 339 F.3d 893, 909 (9th Cir. 2003) (upholding three-year statute of limitations because employer "took no affirmative action to assure compliance" with FLSA requirement).

Kollias attempted to plead ignorance about record-keeping for any of his employees' pay records.  Robles 56.1 Statement at ¶¶ 15 – 17.

Q        Did -- where were the records for Rita Planet kept?

Kollias:  If it's there, at the Argonaut Diner.
Q        And -- have the books and records for Rita Planet ever been kept at any
          other location besides Argonaut?

Kollias:  Between Rita Planet and Argonaut, I don't believe it was in
            either location.
    …

---

based on any claimed filial loyalty.  Robles 56.1 Statement at ¶¶ 10 – 14.

Q      Okay.  What records have been kept at the Cafe Eclipse location?

Kollias:  I don't know what records you mean.

Q      Are there books and records for Rita Planet?

Kollias:  Rita Planet is just a cafeteria, small place.  If it's any records I told you it's between Rita Planet and Argonaut.

Q      I'm not sure I understand when you say it's between.

Kollias:  I don't understand what kind records you're talking about.

Q      Any records, payroll, tax, anything.

Kollias:  Yeah, that's why I kept saying, if we have any, at Rita Planet or Argonaut Diner, we have an office there.

Q      Do you know what, if any, records are kept at the Cafe Eclipse location?

Kollias:  No.

Q      Do you know what records for Rita Planet are kept at Argonaut?

Kollias:  No.

See, Exhibit C at pages 18 – 20.

Kollias admitted that did not know– besides perhaps receipts of cash received by employees – what records were maintained by his own companies.  Robles 56.1 Statement at ¶15; Exhibit C at pages 18 – 19, 20 – 23, 35, 53 - 54.  Kollias' admissions show that the defendants willfully circumvented obligations under federal and state law by failing to keep any time records for hours that the plaintiff worked.  Robles 56.1 Statement at ¶ 16.

15

In the deposition of the Manager, it was disclosed, *and admitted*, that the hours worked by employees were noted by her in a notebook.   Production of this book was called for by the plaintiff's counsel, but that document was never produced by the defendants.  Robles 56.1 Statement at ¶ 11, fn. 2.  The plaintiff would respectfully request that the Court to take notice of this non-production in the instant motion for partial summary judgment.

As further evidence of willfulness, and lack of "good faith" (discussed *infra),* it is beyond cavil that the plaintiff complained to Kollias and the Manager about his compensation and the unlawful deduction of $50.00 from his weekly payments of cash while working at Café Eclipse between 2002 and 2004.  Robles 56.1 Statement at ¶¶ 35 and 39.  In response, Kollias retaliated against plaintiff by cutting Robles' hours – and thus reducing his total take-home cash payment.

Kollias showed further conscious and willful disregard for his legal obligations – in record-keeping and in the payment of overtime compensation – by admitting that his employees are paid in cash.  Robles 56.1 Statement at ¶ 15; Exhibit C at pages 18 – 9, 20 – 3, 35, and 53 – 4.  The colloquy from Kollias' examination before trial is quite telling on this point:

> Q        Now, what, if any records, are kept of the amounts that are paid to the employees at Argonaut?
>
> Kollias:        I don't know if it's any, but those people I pay, especially the bigger bills I pay, so I do not keep any records.  I pay people per week, so long as they're getting paid they do not come back to me to ask for their pay again.

Exhibit C at page 22, lines 18 – 25.

16

**E      Plaintiff Is Entitled to Liquidated Damages Under
the Act and New York State Labor Law**

An employer found to have violated the overtime provisions of the Act shall be liable not only

for "payment of wages lost," but also "an additional amount as liquidated damages," 29 U.S.C. §

216(b), unless:

> the employer shows . . . that the act or omission giving rise to such action
> was in good faith and that he had reasonable grounds for believing that his
> act or omission was not a violation of the [Act, in which case] the court
> may, in its sound discretion, award no liquidated damages or award any
> amount thereof not to exceed the amount specified in section 216 of the
> Act.

29 U.S.C. § 260 (1999).

The good faith requirement of the Act requires that Kollias and the defendants had an honest

intention to ascertain and follow the dictates of the Act.  See, Laffey v. Northwest Airlines, Inc., 567

F.2d 429, 465 (D.C.Cir.1976), cert. denied, 434 U.S. 1086, (1978).  Moreover, Kollias cannot – as he

did in his depositions – merely rely on his ignorance in meeting the standard for good faith under the

Act.  Marshall, supra, 668 F.2d at 753 – 54.  Barcellona v. Tiffany English Pub, 597 F.2d 464, 468-

69 (5th Cir. 1979).

The defendants' violations of the Act were willful, and those violation were not in good faith.

The evidence on both points of "willfulness" and "lack of good faith" is the same, making plaintiff

eligible for both a three year limitations period (as discussed supra) and liquidated damages under the

Act.

Under the New York Labor Law, liquidated damages are only awarded if the underpayment

by the employer is found to be willful. See N.Y. Labor Law § 663(1).  The standard in New York for

17

willfulness is much the same as the standard under the FLSA. See Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) ("[T]he standard for willfulness for purposes of the FLSA statute of limitations does not appreciably differ from the standard applicable under New York law . . .."). Knowledge is a required element of willfulness. See P & L Group, Inc. v. Garfinkel, 541 N.Y.S. 2d 535, 535 (2d Dept. 1989) ("[P]laintiff knowingly, deliberately and voluntarily disregarded its obligation under the Labor Law to pay the employees' commissions and, thus, the failure to pay the wages was 'willful[.']").

The Plaintiff has met his burden of proving that Defendants' actions occurred with knowledge of the fact that they were violating the law. Thus, willfulness under New York law has been established.

**F.     Plaintiff is Entitled to Spread of Hours Compensation**

The Spread of Hours Wage Order states in relevant part: An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required…for any day in which: (a) the spread of hours exceeds 10; or (b) there is a split shift; or (c) both situations occur.  "Spread of hours" is defined as the "interval between the beginning and the end of an employee's workday." N.Y. Comp. Codes R. & Regis. Tit. 12 § 142-2.18. Robles clearly worked 10 hours or more per day, during the entirety of this suit.  It must be noted that our Circuit is currently divided as to whether the regulation applies where an employee earns "sufficiently more than the statutory minimum wage." *Compare* Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327 (S.D.N.Y. 2005); Chan v. Sung Yue Tung Corp., 2007 U.S. Dist. LEXIS 33883 (S.D.N.Y. May 4, 2007) *with*  Espinosa v. Delgado Travel Agency, Inc. 2007 U.S. Dist. LEXIS 30676 (S.D.N.Y.,

April 24, 2007); <u>Jenkins v. Hanac, Inc.</u>, 493 F.Supp. 2d 556 (E.D.N.Y. 2007).  However, the plaintiff

would argue that this issue is not settled law in the Second Circuit, and prays the Court to consider

this serious matter in light of the particular facts of this case the plaintiff's contention  that these

rulings do damage to the public policy considerations behind the "spread of hours" wage order in

New York State.

Plaintiff  worked approximately 65 hours per week,  Robles 56.1 Statement at ¶ 26;

Exhibit E, and more than10 hours a day, and therefore he is entitled to one additional hour of pay

per day worked pursuant to the "Spread of Hours Wage Order."

## G.   <u>Defendant's Made Unlawful Deductions from Plaintiff's Paychecks</u>

An employer may not make any deductions from the wages of an employee, unless the

deduction is made in accordance with the law or is expressly authorized in writing by the

employee and for the benefit of the employee.  <u>N.Y. S. Labor Law</u> § 193.  This consent is never

alleged to have occurred in the instant matter.  Robles 56.1 Statement at ¶¶ 33-40.  An employer

in New York State is strictly limited in the ability to make deductions from an employee's wages,

even *with* the employee's written approval.  <u>Pachter v. Bernard Hodes Group, Inc</u>. 2005 U.S.

Dist. Lexis 18005 (S.D.N.Y 2005).  Employers even violate Section 193 when they make

subtractions from an employee's compensation because of poor performance.  <u>Id</u>. at 21.  <u>See also</u>,

<u>Guepet v. Int'l TAO Sys., Inc.</u>, 110 Misc. 2d 940, 940-42, 443 N.Y.S.2d 321 (Sup. Ct. Nassau

Co. 1981) ("[n]owhere does [Section 193] permit an employer to make contemporaneous

deductions from wages because an employee failed to perform properly.")

It is undisputed that the plaintiff never agreed to the weekly so-called "tax" deduction

from his wages.  Exhibit F (notations of deduction for ½ of "taxes").  Kollias regularly deducted $50.00 from each of the plaintiff's paychecks, without authorization.  Robles 56.1 Statement at ¶¶ 37; 33- 39.  When the plaintiff complained of the deductions, Kollias further penalized him by reducing his hours—and thus his pay.  Robles 56.1 Statement at ¶¶ 35 – 40.  According to the Manager's deposition testimony, Kollias decided to "dock" $50 from the plaintiff's wages every week.  Robles 56.1 Statement at ¶¶ 30 – 40.  The Manager also testified that the deductions were allegedly for tax purposes.  Robles 56.1 Statement at ¶36.  This contention was supported by the written records kept by the defendants.  Exhibit F.   However, Kollias' testimony contradicted the Manager's explanation in claiming that the deductions were for insurance premiums.  Kollias' credibility is very much in question.

It is clear that the plaintiff never agreed to the weekly deductions from his wages, and that Kollias never provided him with a clear or truthful explanation as to why they were deducting the money. Defendants have never disputed this fact nor offered any evidence to the contrary. Based on the forgoing, Defendants violated N.Y. Labor Law § 193 by unlawfully deducting money from plaintiff's wages.

**III.**
**CONCLUSION**

For the reasons stated above and in the accompanying affirmation and Rule 56.1

statement, Robles is entitled to summary judgment on his FLSA and New York Labor Law

claims, and prays this Court for judgment and the right to submit an application for attorney fees

and costs under the applicable statutes.


Dated: New York, New York
          September 20, 2007

                                        MICHAEL FAILLACE & ASSOCIATES, P.C.

                                        By: _____
                                              Michael Faillace [MF-8436]
                                              90 Park Avenue, Suite 1700
                                              New York, New York 10016
                                              (212) 786-7368 (phone)
                                              *Attorneys for Plaintiff*

To:
Arthur H. Forman
Attorney at Law
98-20 Metropolitan Avenue
Forest Hills, New York 11375
*Attorneys for the Defendants*

## CERTIFICATE OF SERVICE

STATE OF NEW YORK     )
                      : ss.:
COUNTY OF NEW YORK  )


Michael Faillace, an attorney duly admitted in the State of New York and being sworn, deposes and affirms the following:

1.      I am not a party to this action, am over 18 years of age and reside in the State of New York.

2.      On September 20, 2007, I served the annexed "Motion for Partial Summary Judgment," along with the accompanying Declaration of Michael A. Faillace, annexed Exhibits, and the plaintiff's Rule 56.1 statement of undisputed material facts on the individual listed on the below service list pursuant to Stipulation dated September 18, 2007 by electronic mail.


_____
Michael Faillace [MF-8436]


**SERVICE LIST:**
Arthur H. Forman
Attorney at Law
98-20 Metropolitan Avenue
Forest Hills, New York 11375
*Attorneys for the Defendants*